UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| United States of America, | No. 2:17-cr-20465-DPH |
| v. | Offenses: 18 U.S.C. § 1349 |
| D-13 Steven Adamczyk, | Maximum Sentence: |
| | 18 U.S.C. § 1349: 10 years / $250,000 |
| Defendant. | fine or twice the gain/loss |

---

## UNITED STATES' COMBINED MOTION AND BRIEF FOR REDUCTION IN SENTENCING UNDER U.S.S.G. § 5K1.1 AND MEMORANDUM IN AID OF SENTENCING

---

The United States submits this Combined Motion and Brief for Reduction in Sentence under United States Sentencing Guidelines Section 5K1.1 and Memorandum in Aid of Sentencing pertaining to D-13 Steven Adamczyk.  The United States respectfully requests that the Court (1) impose a sentence of 42 months, approximately a 25% reduction off of the low end of the Sentencing Guidelines range of 57 months; (2) order Adamczyk to pay restitution in the amount of $1,237,57.97, jointly and severally with his co-conspirators in the fraud; (3) order a special assessment of $100; and (4) order a three-year term of supervised release.

The United States agrees with the defendant that are mitigating factors that it has considered in recommending a substantial assistance reduction and its sentence in this case. Defendant has otherwise lived a law-abiding life. He has engaged in laudatory acts of community service. He has expressed true remorse and, in the government's view, displayed visible emotion and contrition in accepting responsibility for his actions.

However, defendant's request for a non-custodial sentence is not realistic for three reasons. <u>First</u>, it would not promote just punishment, general deterrence, respect for the rule of law, or avoid unwarranted sentencing disparities. This is one of the most egregious health care fraud and opioid abuse schemes in United States history. Defendant alone submitted over $3.4 million in false billings as part of the conspiracy. But this offense is not only about the millions of dollars in loss to a government health care program. In addition to stealing money intended for the care of the elderly and disabled, defendant exploited some of the most vulnerable members of society in Detroit. Defendant prescribed opioids and required addicted beneficiaries to receive medically unnecessary and painful facet joint injections in order to obtain their opioids. In doing so, as defendant admits, he "let[] monetary gain effect the quality of care that he gave patients." ECF 604 at 4.

Second, defendant was not "the first physician and one of the first defendants to plead guilty," as he contends.  ECF 604 at 2-3.  By the time that defendant pled guilty on August 9, 2018 (ECF 277), *12* defendants,[1] including *5* physicians,[2] had already pled guilty, including two (Saperstein and Haq) who pled guilty nearly a year before defendant.  While defendant ultimately did accept responsibility after he hired his current counsel (his third set of defense attorneys) and cooperate, the cooperation unfortunately was less fruitful than it would have been if defendant had accepted responsibility earlier.

Third, defendant is a trained and licensed medical professional.  Indeed, the letters submitted by the defense demonstrate that defendant had many advantages in life.  Defendant is a person from whom the government and the medical profession expected candor and honesty. Instead, defendant betrayed Medicare's trust and violated his medical oath.

A non-custodial sentence or short period of incarceration will not satisfy the purposes of the criminal law.  The Court should order the imposition of the sentence recommended by the United States.

---

[1] ECF 161 – Haq; ECF 196 – Mozeb; ECF 209 – Sheikh; ECF 239 – Almatrahi; ECF 237 – Brown; ECF 260 – Qazi; ECF 267 – Borgula; 17-cr-20465 – [Sealed Defendant]; 17-cr-20468 – Saperstein; 17-cr-20744 – Rasool; 17-cr-20479 – Ahmad; 17-cr-20692 – Siddiqi.

[2] Haq, Sheikh, Brown, Saperstein, and Rasool.

3

## **Background**

Adamczyk pled guilty to being responsible for submitting over $3.4 million in false and fraudulent health care fraud claims as part of a scheme that involved medically unnecessary back injections, prescriptions for powerful, addictive opioids, and the exploitation of vulnerable Medicare beneficiaries.  Adamczyk observed from other doctors at the Tri-County Clinic – such as Pappas, Omar, Betro, and Zahoor – that the clinics had a "shots-for-pills" protocol and compelled vulnerable beneficiaries to receive medically unnecessary back injections.  In exchange for tolerating the injections, the beneficiaries received prescriptions for opioids, often in dosages suitable only for terminally-ill, cancer patients.  The injections were billed to Medicare as "facet joint injections" because that was the most lucrative injection to bill, even though the physicians did not actually administer facet joint injections.  Rather, the physicians injected patients with Marcaine, an anesthetic intended only for diagnostic purposes that provided limited, if any, therapeutic relief.  Nonetheless, Adamczyk and his co-conspirators repeatedly billed Medicare for facet joint injections because they knew that Medicare would pay more if they did.

Although patients told the doctors that they did not want or need the injections, the patients were forced through their addiction to agree because, in

4

Rashid's words, "we had complete control [over them] because of the prescriptions." D.E. 441, Trial Tr. at 24. And as some of the patients testified at trial, they and their relatives suffered medical harm as a result of the injections.

## Procedural History

On July 20, 2018, defendant was named in a one-count Superseding Information. Count 1 charged the defendant with Conspiracy to Commit Healthcare Fraud, in violation of 18 U.S.C. § 1349. On August 9, 2018, defendant was arraigned and entered a plea of guilty to the Superseding Information. Defendant also entered into a cooperation agreement with the United States.

## United States Sentencing Guidelines ("U.S.S.G.") Section 5K1.1 Motion

After pleading guilty and entering into a cooperation agreement, Defendant cooperated with law enforcement in the Tri-County investigation and provided information that was of use to the government in prosecuting Pappas, Omar, Betro, and Zahoor, and others. While the government elected not to call defendant to testify at trial, defendant did engage in a time-consuming review of patient files that assisted the government's understanding of the scheme and prosecution of the case. Adamczyk's assistance constitutes substantial assistance to the United States within the meaning of section 5K1.1. The government is prepared to provide additional information regarding Adamczyk's cooperation at sentencing. Based on the above,

the United States requests that the Court reduce Adamczyk's sentence by approximately 25 percent from the applicable Guidelines range and impose a sentence of 42 months.

## Sentencing Factors

Title 18, United States Code, Section 3553(a), provides numerous factors that the Court is to consider in sentencing the defendant. Factors pertinent to the instant offense are discussed below, numbered as they are in Section 3553(a).

**(1)  The nature and circumstances of the offense and the history and characteristics of the defendant.**

### (A)  Nature and circumstances of the offense

The nature and circumstances of the offense are alarming, not only because of the sheer numbers of false claims and opioids that were distributed, but because of the significant patient harm and exploitation that resulted. The Court observed the testimony of Medicare beneficiaries at trial who testified about their visits at Tri-County. They shared similar experiences: although they told the doctors that the injections were painful and did not help, the doctors ignored their concerns and told them that they would not get an opioid prescription unless they agreed to receive the injections. D.E. 437, Trial Tr. 14:12-15, 19:11-19 (Smith); D.E. 440, Trial Tr. 20:3-6, 217:1-6 (Pitts);  D.E. 440, Trial Tr. 225:16-21, 217:1-6 (Watson). Their trial testimony was echoed by dozens of beneficiaries interviewed by law enforcement in

6

this case, and is representative of the experience of defendant's patients.

Defendant, as did the other doctors, also accepted illegal kickbacks and bribes from Rashid in exchange for ordering unnecessary services, such as ultrasound services. The illegal kickbacks and bribes alone should have been enough to alert the defendant that he had long ago crossed the line into criminality.

Importantly, defendant is a medical professional who betrayed the Hippocratic Oath. He was in the examination room, injected patients in the back, and provided prescriptions for high-powered opioids that fueled addiction. It is true that defendant did not participate in the scheme for as long as the defendants convicted at trial – Patino, Pappas, Omar, and Zahoor – and that he also accepted responsibility; accordingly, he should receive a substantially lower sentence. But, as defendant admits, he attended a pain conference where he learned that the facet joint practices at Tri-County were wrong, but nonetheless continued to administer those unnecessary injections as a result of pressure and a desire to avoid losing a lucrative job.

### (B)  The history and characteristics of the defendant

Adamczyk is a highly intelligent and well educated individual. He has a positive relationship with his parents and with his family. He actively participates in the community and has performed beneficial acts of service.

Defendant contends that a downward departure is warranted because of his community service. But he acknowledges, as he must, that civic, charitable, or public service is ordinarily not relevant in determining whether a departure is warranted under the advisory guidelines. USSG § 5H1.11. As the Sixth Circuit has held, in reversing a district court that erred in departing downward, a defendant's community ties, civic and charitable deeds, and prior good works rarely are unusual enough to warrant departure; it is "usual" and "ordinary" in prosecution of similar white-collar crimes that defendants are involved in community charities, civic organizations, and church efforts. *United States v. Kohlbach*, 38 F.3d 832, 838-839 (6th Cir. 1994). Adamczyk's acts of service are undeniably laudable and worthy of praise. However, they are best accounted for by calculating the sentence based on low-end of the Guidelines range, as the government has done, as opposed to departing downward.

### (2)  The need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with appropriate education, vocational training, or medical care

The appropriate punishment must reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense. Health care fraud is a substantial problem nationwide and has recently been the subject of sustained public discussions and debate. The National Health Care Anti-fraud

Association, an organization composed of both public and private health insurers and regulators, conservatively estimates that three percent of all health care spending in the United States is lost due to fraud.  As this Court knows, health care fraud has been a particular plague in the Eastern District of Michigan.

Just punishment is particularly important here because this offense involved not only the theft of substantial sums of money, but also the distribution of opioids to fuel patients' addiction and the administration of injections that resulted in physical harm.  A non-custodial or short term of imprisonment sentence is not an appropriate sanction in a situation where Adamczyk caused the submission of over $3.4 million in false claims, taking resources designated for the care of the elderly and disabled in order to sustain his own lifestyle.

In addition, Adamczyk's punishment should take into account not only the scope and seriousness of his own criminal conduct, but also the need to deter future physicians from stealing from the Medicare program.  The Sixth Circuit Court of Appeals has emphasized that "economic and fraud-based crimes . . . are prime candidates for general deterrence" because these crimes "are more rational, cool, and calculated than sudden crimes of passion or opportunity."  *United States v. Peppel*, 707 F.3d 627, 637 (6th Cir. 2013) (*quoting United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006)).  While specific deterrence may not be necessary to prevent

Adamczyk from re-offending, a custodial sentence would further the purposes of general deterrence.

### (3)  The kinds of sentences available

Under 18 U.S.C. § 1349, the maximum sentence is ten years' imprisonment. The maximum fine is $250,000 or twice the pecuniary gain or loss from the instant offense.

### (4)  The sentencing range established by the U.S.S.G.

The parties are in agreement regarding the sentencing guidelines range that is reflected in the Plea Agreement.  As stated in the Plea Agreement, the Government and the Defendant submit that the Guidelines range for the defendant should be calculated as follows:

| | | |
|---|---|---|
| Base Offense Level: | 6 | [U.S.S.G. § 2B1.1(a)(1)] |
| Intended Loss > $1,500,000: | +16 | [U.S.S.G. § 2B1.1(b)(I)] |
| HCF Enhancement: | +2 | [U.S.S.G. § 2B1.1(b)(7)(iii)] |
| Sophisticated Means: | +2 | [U.S.S.G. § 2B1.1(b)(10)(C)] |
| Abuse of Trust: | +2 | [U.S.S.G. § 3B1.3] |
| Acceptance of Responsibility: | −3 | [U.S.S.G. § 3E1.1] |
| Total Offense Level: | 25 (57-71 months) | |

**(5)   Any pertinent policy statement issued by the United States Sentencing Commission ("U.S.S.C.")**

The United States is unaware of any pertinent policy statements issued by the U.S.S.C.   However, the Patient Protection and Affordable Care Act ("PPACA"), enacted in March 2010, provides the most recent evidence of congressional intent in this area of the law.   PPACA specifically provides for increased sentences for health care fraud offenses, and further requires the U.S.S.C. to "ensure that the Federal Sentencing Guidelines and policy statements - (i) reflect the serious harms associated with health care fraud and the need for aggressive and appropriate law enforcement action to prevent such fraud; and (ii) provide increased penalties for persons convicted of health care fraud offenses in appropriate circumstances."   Pub. L. No. 111-148, § 10606(a)(3).

**(6)   The need to avoid unwarranted sentencing disparities among defendants with similar records**

This sentencing factor is intended to address national sentencing disparities, and it is widely recognized that a Guidelines sentence is the best way to avoid such disparities.   *United States v. Smith*, 564 F. App'x 200, 205 (6th Cir. 2014) (stating that "one of the fundamental purposes of the Guidelines is to help maintain national uniformity in sentences, and considering that most sentences are within the Guidelines, the Guidelines themselves represent the best indication of national

sentencing practices"); *Rita v. United States*, 551 U.S. 338 (2007). Defendant's Guidelines range takes into account the specific characteristics of his offense and imposing a Guidelines sentence is the best way to avoid unwarranted sentencing disparities with similarly-situated defendants nationwide.

While national disparity is the primary concern animating this sentencing factor, the Court also has discretion to consider the potential for disparity between co-defendants. *United States v. Wallace*, 597 F.3d 794, 803 (6th Cir. 2010). Adamczyk was charged for his involvement in a scheme with a number of other charged co-conspirators and is the third defendant to be sentenced.

While Adamczyk is less culpable than Rashid, he is more culpable than Qazi, who received a sentence of 20 months. Unlike Qazi, Adamczyk is a medical professional. Unlike Qazi, who participated only in the home health part of the scheme, Adamczyk prescribed opioids and administered the injections that resulted in patient harm. Adamczyk also reaped greater financial rewards than Qazi. One fact in Adamczyk's favor is that he cooperated to a greater degree and, unlike Qazi, Adamczyk did not initially lie to law enforcement agents, but those factors are reflected in the government's greater recommended 5k reduction of 25%, as opposed to the 15% reduction in the Guidelines range that the government recommended for Qazi.

The defendants in the scheme are the following:

| Defendant | Case No. | Guilty Plea or Conviction | 5K | Guidelines R | Sentence |
|---|---|---|---|---|---|
| Francisco Patino | 18-cr-20451 | Conviction | N/A | TBD | |
| Spillios Pappas | 17-cr-20465 | Conviction | N/A | TBD | |
| Joseph Betro | 17-cr-20465 | Conviction | N/A | TBD | |
| Tariq Omar | 17-cr-20465 | Conviction | N/A | TBD | |
| Mohammed Zahoor | 17-cr-20465 | Conviction | N/A | TBD | |
| | | | | | |
| *Mashiyat Rashid* | *17-cr-20465* | *Guilty Plea* | *40%* | *216 months* | *180 months* |
| | | | | | |
| **DOCTORS** | | | | | |
| Glenn Saperstein | 17-cr-20468 | Guilty Plea | | 97-120 months | |
| Abdul Haq | 17-cr-20465 | Guilty Plea | | 97-120 months | |
| Zahid Sheikh | 17-cr-20465 | Guilty Plea | | 87-108 months | |
| Kashif Rasool | 17-cr-20744 | Guilty Plea | | 70-87 Months | |
| Steven Adamczyk | 17-cr-20465 | Guilty Plea | 25% | 57-71 Months | |
| Mieutennun Brown | 17-cr-20465 | Guilty Plea | | 30-37 Months | |
| David Yangouyian | 18-cr-20451 | Guilty Plea | | 24-30 Months | |
| David Weaver | 18-cr-20451 | Guilty Plea | | | |
| Manish Bolina | 17-cr-20465 | Guilty Plea | | 18-24 Months | |
| Hussein Saad | 17-cr-20465 | Guilty Plea | | 18-24 Months | |
| | | | | | |
| **OFFICE MANAGER** | | | | | |
| Yasser Mozeb | 17-cr-20465 | Guilty Plea | | 188-235 Months | |
| | | | | | |
| **HOME HEALTH** | | | | | |
| Tasadaq Ali Ahmad | 17-cr-20479 | Guilty Plea | | 168-180 Months | |
| Tariq Siddiqi | 17-cr-20692 | Guilty Plea | | 51-63 Months | |
| SEALED | 17-cr-20465 | Guilty Plea | | 37-46 Months | |
| Joshua Burns | 18-cr-20461 | Guilty Plea | | 37- 46 Months | |
| Yousef Almatrahi | 17-cr-20465 | Guilty Plea | | 51-63 Months | |
| Stephanie Borgula | 17-cr-20465 | Guilty Plea | | 30-37 Months | |
| *Hina Qazi* | *17-cr-20465* | *Guilty Plea* | *15%* | *30 Months* | *18 Months* |

## **Conclusion**

Based upon the considerations set forth above, the United States respectfully requests that this Court grant its motion under Section 5K1.1 for a sentence reduction and recommends that the Court (1) impose a sentence of 42 months, approximately a 25% reduction off of the low end of the Sentencing Guidelines range of 57 months; (2) order Adamczyk to pay restitution in the amount of $1,237,57.97, jointly and

severally with his co-conspirators in the fraud; (3) order a special assessment of $100;

and (4) order a three-year term of supervised release.

 

Respectfully submitted,

SAIMA SHAFIQ MOHSIN
Acting United States Attorney

JOSEPH S. BEEMSTERBOER
Acting Chief
U.S. Department of Justice
Criminal Division, Fraud Section

s/JACOB FOSTER
JACOB FOSTER
Assistant Chief
U.S. Department of Justice
Criminal Division, Fraud Section
1400 New York Ave., N.W.
Washington, D.C.  20005
Phone:  (202) 615-6521
Email:  jacob.foster@usdoj.gov

Date:  October 22, 2021

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 22, 2021, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to counsel for Defendant.

s/Jacob Foster
Jacob Foster
Assistant Chief
U.S. Department of Justice
Criminal Division, Fraud Section
1400 New York Ave., N.W.
Washington, D.C.  20005
E-Mail: jacob.foster@usdoj.gov

Date:  October 22, 2021

15